UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA STAMATOPOULOS,

    Plaintiff,

v.

OPTALIS HEALTH AND
REHABILITATION,

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Claimant*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff Anita Stamatopoulos, by and through her attorneys, HURWITZ LAW PLLC, hereby alleges as follows:

## INTRODUCTION

1. This is a civil action for money damages, liquidated damages, costs, attorneys' fees and other relief against Defendant Optalis Health and Rehabilitation ("Defendant"). Plaintiff Anita Stamatopoulos asserts claims of age discrimination in violation of Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621,

1

*et seq.* and Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA), M.C.L. 37.2101, *et seq.*

## PARTIES AND JURISDICTION

2. Plaintiff Anita Stamatopoulos ("Plaintiff") is an individual residing in Ann Arbor, Washtenaw County, Michigan.

3. Optalis Health and Rehabilitation is a company headquartered in Novi, Oakland County, Michigan.

4. This Court has jurisdiction over the claims under the ADEA, 29 U.S.C. § 621, *et seq.* and supplemental jurisdiction of the claim under the ELCRA, M.C.L. 37.2101, *et seq.* pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), as it is the district where Defendant resides.

6. Plaintiff filed charges of age discrimination with the Equal Employment Opportunity Commission on May 22, 2024, and received a right to sue letter within the last 90 days.

## GENERAL ALLEGATIONS

7. Defendant is a for-profit healthcare company that provides health and recovery care for Michigan residents.

8. At all times relevant to this Complaint, Plaintiff was employed as Director of Nursing for Defendant.

2

9. Plaintiff was well-respected in the workplace and admired for her experience of over 17 years working for Heartland before the building was bought by Defendant.

10. Plaintiff functioned as a leader within her team. Throughout her employment, she received consistently positive performance reviews.

11. Prior to Plaintiff's tenure, Defendant had 28 State Survey Citations. Under Plaintiff's direction, and as recently as March 26, 2024, Defendant had only 13.

12. Plaintiff had no prior history of discipline.

13. Plaintiff never received any formal or informal warnings.

14. Plaintiff was never placed on a performance improvement plan.

15. Plaintiff consistently received positive performance reviews.

16. In January 2024, Defendant hired Amy Swalwell as the new Administrator and Plaintiff's direct manager.

17. Almost immediately after meeting Plaintiff, Ms. Swalwell interrogated Plaintiff about her age, stating that Plaintiff must be older than her and asking Plaintiff how much longer she intended to continue working before retirement.

18. Soon after, Ms. Swalwell stated to Registered Nurse Andrea Yelder during a job interview that she does not like the "old" staff and intended to "get rid of them."

19. Ms. Swalwell further explained that she would be willing to replace the entire building with "hiring agency" staff if it would help her achieve her goal of ridding Defendant of its "old" employees.

20. In early March 2024, Plaintiff reached out to Brittany Pierson, Regional Consultant, regarding concerns about Ms. Swalwell's aggressive behavior and treatment of employees.

21. Ms. Pierson advised Plaintiff to contact Galina Petlackh and the Corporate Office.

22. On March 17, 2024, Plaintiff emailed Monica Knowles and Ms. Petlackh describing Ms. Swalwell's abusive management style and cultivation of a hostile work environment.

23. Plaintiff was directed by Ms. Petlackh to stay at home while Defendant investigated her complaints against Ms. Swalwell.

24. Plaintiff was ill on March 18, 2024, and was seen by her physician.

25. Contrary to Defendant's policy, Ms. Petlackh required Plaintiff to produce a doctor's note to justify her absence.

26. Plaintiff produced a note from the doctor clearing her to return on March 20, 2024.

27. Despite that fact, Plaintiff was told to stay home pending the investigation.

28. When Plaintiff questioned why she could not return to work, Ms. Petlackh told her not to worry about the investigation because she was "doing a great job" and that "everything will be okay."

29. Plaintiff was also told that she was asked to stay home out of "concern for [her] well-being."

30. Plaintiff's access to her email and the electronic medical records was disconnected on March 26, 2024.

31. When Plaintiff reached out to Ms. Petlackh to inquire about her email being disconnected, Ms. Petlackh responded that she would call her "tomorrow."

32. On March 27, 2024, only ten days after Plaintiff filed her complaint, she received an aggressive call from Ms. Petlackh and Director of Human Resources, Tressa Sanders.

33. During this phone call, Plaintiff was told that her complaint was "baseless," without any further justification, and that "effective immediately" they were "accepting her resignation."

34. Plaintiff did not resign from her position.

35. Defendant verbally attacked Plaintiff and concluded by stating that it "would accept [Plaintiff's] resignation," which is legally a termination because Plaintiff did not offer to resign—she only told management that she could not work with an abusive administrator.

5

36. Following Plaintiff's termination, she was replaced with a younger employee named Dejanae Lewis, who then became Director of Nursing.

## COUNT I
### VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT
### (DISPARATE TREATMENT BASED ON AGE)

37. Plaintiff incorporates the foregoing paragraphs by reference herein.

38. Pursuant to the Age Discrimination in Employment Act ("ADEA"), Plaintiff is a member of a "protected class" because she was at least 40 years old at the time of her termination.

39. Plaintiff met or exceeded Defendant's legitimate job expectations during her employment.

40. Defendant took one or more adverse actions against Plaintiff because of her age, including subjecting Plaintiff to different and less favorable terms and conditions of employment than employees who were younger, and then terminating Plaintiff without any justification after she had been an exemplary employee for many years.

41. Defendant treated similarly situated younger employees more favorably than they treated Plaintiff.

42. Defendant's discriminatory conduct was intentional.

43. Defendant's conduct was done with malice or reckless indifference to Plaintiff's rights under federal law.

44. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on age on June 30, 2022.

45. Plaintiff was damaged by Defendant's discriminatory conduct in violation of the ADEA. Her damages include, but are not limited to, her lost wages, damage to her career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

## COUNT II
## DISCRIMINATION IN VIOLATION OF THE ELCRA
## (DISPARATE TREATMENT BASED ON AGE)

46. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

47. Defendant employed Plaintiff within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2010, *et seq*.

48. Defendant is an employer within the meaning of the ELCRA, M.C.L. 37.2101, *et seq*.

49. The ELCRA prohibits, among other things, discrimination based upon age.

50. Plaintiff was at least 40 years old at the time of her termination.

51. Plaintiff was qualified for her respective position.

52. Plaintiff was held to different standards than her coworkers based on her age.

53. Plaintiff suffered adverse action, including termination, while younger employers were retained.

54. Defendant's conduct was willful.

55. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional distress, outrage, humiliation, indignity and disappointment.

### COUNT III
### VIOLATION OF THE ADEA, <u>RETALIATION</u>

56. Plaintiff restates the foregoing paragraphs as set forth fully herein.

57. Plaintiff engaged in protected activity by opposing Defendant's discriminatory behavior.

58. Defendant subjected Plaintiff to adverse employment actions including terminating her employment.

59. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

60. But for Plaintiff's protected activity, Defendant would not have

subjected her to such adverse actions.

61. As a result of Defendant's conduct, Plaintiff has suffered financial loss and emotional distress as described herein.

## COUNT IV
## RETALIATION IN VIOLATION OF
## MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT
## M.C.L. 37.2202(a)(1)

62. Plaintiff incorporates the preceding allegations as if fully set forth herein.

63. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2202 *et seq.*

64. Plaintiff engaged in protected activity by opposing Defendant's discriminatory behavior.

65. Defendant subjected Plaintiff to adverse employment actions including terminating her employment.

66. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

67. But for Plaintiff's protected activity, Defendant would not have subjected her to such adverse actions.

68. As a result of Defendant's conduct, Plaintiff has suffered financial loss and emotional distress as described herein.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff claims as follows:

A. Judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, compensatory damages, emotional distress, punitive damages, and attorney fees under the ELCRA and ADEA;

B. Interest;

C. Compensatory damages, including front pay and back pay;

D. All further relief as the Court deems just and equitable.

Respectfully submitted
HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Attorney for Plaintiffs
340 Beakes St. Ste. 125
Ann Arbor, MI 48104
(844) 487-9489

Dated: November 20, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA STAMATOPOULOS,

    Plaintiff,

v.

OPTALIS HEALTH AND REHABILITATION,

    Defendant.

Case No.

Hon.

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Claimant*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff Anita Stamatopoulos, by and through her attorneys, HURWITZ LAW PLLC, hereby demand a jury trial in the above-captioned matter for all issues so triable.

    Respectfully submitted
    HURWITZ LAW PLLC

    */s/ Noah S. Hurwitz*
    Noah S. Hurwitz (P74063)
    Attorney for Plaintiffs
    340 Beakes St. Ste. 125
    Ann Arbor, MI 48104
Dated: November 20, 2024    (844) 487-9489